| ¶DENNIS R. BAGNERIS, SR., Judge.
Plaintiffs, John and Jane Roach (hereinafter “Plaintiffs”), appeal the trial court’s judgment, which granted a summary judgment in favor of defendant, Riverside Court Condominium Association, Inc. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On September 19, 2000, Plaintiffs brought the present suit for property dam *119 ages against Burde L. Kamath, and the Riverside Court Condominium Association Inc., (hereinafter “the Riverside Association”). Specifically, the Plaintiffs’ petition alleges, in pertinent part:
3.
John and Jane Roach are the owners of the condominium bearing the address 6220 Ackel Street, Unit 488, Metairie, Louisiana 70008. The Roach’s condominium is located on the first floor of the complex.[1]
4.
On information and belief, Mr. Burde L. Kamath is the owner of a condominium unit located on the second floor of the complex, immediately above the Roach’s unit and bearing the address 6220 Ackel Street, # 588, Metairie, Louisiana 70003.
The Riverside Court Condominium Association, Inc. is the condominium association whose rules and regulations govern the management of the Victorian Condominiums where the Roachs and Mr. Kamath own their condominiums.
[[Image here]]
8.
In approximately 1997, John and Jane Roach began to notice damage at unit # 488 caused by water coming from Defendant Kamath’s condominium unit located immediately above their unit.
[[Image here]]
10.
On numerous occasions thereafter, the Roachs approached Mr. Kamath regarding the water leaking from his unit into theirs and causing problems. On each of those occasions, Mr. Kamath advised that he would tend to the problem and remediate it.
11.
On numerous occasions, the Roachs approached the defendant Condominium Association through its agent, Garnet Gravert, the manager of the complex, and asked her about the water leaking. The defendant Condominium Association, through its agent Ms. Gravert, advised the Roachs that this was an issue between the owners, and that the Condominium Association would not get involved.
[[Image here]]
16.
On information and belief, the damage to the Roach’s condominium unit is being caused by the poor maintenance of the common plumbing serving the condominium complex by the defendant Condominium Association and poor maintenance by Defendant Kamath of his individual unit.
17.
As a result of the leaking from above, the Roach’s condominium # 488 has suffered extensive damages requiring repair and/or replacement of flooring carpet, sheetrock, ceilings, plumbing, and other appurtenances.
In response to these allegations, the Riverside Association filed an answer, which denied the Plaintiffs’ claims. The Riverside Association’s answer further averred that “the sole, or alternatively, a contributing proximate cause of the accident made the subject of this lawsuit was *120 the negligence of plaintiffs for their | ^actions and/or inactions; failure of plaintiffs to mitigate their own damages; and the negligence of a third party.”
On September 26, 2001, the Riverside Association moved for summary judgment, alleging that: (1) Plaintiffs cannot factually support an essential element of their claim, namely that Riverside owned the property which allegedly caused their damages; (2) there is no genuine issue of material fact that Riverside relinquished all responsibility for interior repairs caused by common elements to the owners of the individual condominium units; and (3) there is no genuine issue of material fact regarding the fact that any claims for damages which occurred prior to September 22, 1999 or as a result of leaks which occurred prior to September 22, 1999, are prescribed. In support of this motion, the Riverside Association submitted, as exhibits, the following: (1) Plaintiffs’ petition for damages; (2) notice of limited liability dated June 6, 1995; (3) deposition excerpts of Jane Roach; (4) deposition excerpts of Daniel Roach; and (5) excerpts from the Riverside Association’s declaration.
Plaintiffs objected to the motion for summary judgment by filing a memorandum to the Riverside Association’s motion arguing that summary judgment is inappropriate because the Riverside Association has not submitted any evidence that would support a contention that it is not responsible for the repairs to the common plumbing elements. The attached exhibit included another copy of Plaintiffs’ petition for damages.
Following oral argument on the motion, the trial court rendered the judgment at issue on April 10, 2002, dismissing Plaintiffs’ suit with prejudice. Specifically, the judgment stated, in pertinent part, that the Riverside Association |4“is not responsible for the damages alleged by Plaintiffs].” No reasons for judgment were given. Plaintiffs now appeal this final judgment.
STANDARD OF REVIEW
Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230. A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). A fact is material when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish those ends. Id. La. C.C.P. art. 966(C)(2) provides that where, as in the instant case, the party moving for summary judgment will not bear the burden of proof at trial, his burden does not require him to negate all essential elements of the *121 adverse party’s claim, but rather to point out to the court that there is an absence of | ¿factual support for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law.
DISCUSSION
Plaintiffs’ sole issue on appeal is whether the Louisiana Condominium Act creates an absolute liability on the Riverside Association to repair Plaintiffs’ condominium regardless of the source or any fault. Specifically, Plaintiffs argue that La. R.S. 9:1128 G, which states that “[a]ny portion of the condominium damaged or destroyed shall be repaired or replaced promptly by the association ...” requires reversal of the trial court’s summary judgment.
The Louisiana Condominium Act, which consists of La. R.S. 9:1121.101 through 1124.115, defines condominium as “the property regime under which portions of immovable property are subject to individual ownership and the remainder thereof is owned in indivisión by such unit owners.” La. R.S. 9:1121.103(1). An association (i.e. the Riverside Association) is defined as “a corporation, or unincorporated association, owned by or composed of the unit owners and through which the unit owners manage and regulate the condominium.” La. R.S. 9:1121.103(8). Further, La. R.S. 9:1123.102 provides that the Riverside Association has the power to: “adopt and amend bylaws and rules and regulations;” “adopt and amend budgets for revenues, expenditures, and reserves and make and collect assessments for common expenses from unit owners;” “regulate the use, maintenance, repair, replacement, and modification of common elements;” “exercise any other powers conferred by the declaration or by laws;” Land “exercise any other powers necessary and proper for the governance and operation of the association.” See La. R.S. 9:1123.102.
The Louisiana Condominium Act also requires that “[pjroperty insurance of the common elements and units, exclusive of improvements and betterments installed in units by unit owners, insuring against all risks of direct 'physical loss commonly insured against” be maintained. La. R.S. 9:1123.112 A(l) (Emphasis added). La. R.S. 9:1123.112 G, which Plaintiffs rely upon in their argument that the Riverside Association is required to repair their condominium, provides:
Any portion of the condominium damaged or destroyed shall be repaired or replaced promptly by the association unless (1) the condominium is terminated, (2) repair or replacement would be illegal under any state or local health or safety statute or ordinance, or (3) eighty percent, or such other percentage provided in the declaration, of the unit owners vote not to rebuild. The cost of repair or replacement in excess of insurance proceeds and reserves is a common expense. If the entire condominium is not repaired or replaced, (1) the insurance proceeds attributable to the damaged common elements shall be used to restore the damaged area to a condition compatible with the remainder of the condominium, (2) the insurance proceeds attributable to units and limited common elements which are not rebuilt shall be distributed to the owners of those units and the owners of the units to which those limited common elements were assigned, and (3) the remainder of the proceeds shall be distributed to all the unit owners in proportion to their common element interest. If the unit own *122 ers vote not to rebuild any unit, that unit’s entire common element interest, votes in the association, and common expense liability are automatically reallocated upon the vote as if the unit had been condemned under Section 1121.107, and the association promptly shall prepare, execute, and record an amendment to the declaration reflecting the realloca-tions. Notwithstanding the provisions of this Subsection, Section 1122.120 governs the distribution of insurance proceeds if the condominium is terminated.
Conversely, the Riverside Association relies on La. R.S. 1123.107, which provides that “the association is responsible for maintenance, repair, and replacement of the common elements, and each unit owner is responsible for | ^maintenance, repair and replacement of his unit” to argue that it is not required to make interior repairs to units which have been damaged by common elements.
Plaintiffs cite to two state court decisions, Blackwell v. Hanover Ins. Co., 551 So.2d 47 (La.App. 1 Cir. 10/11/89) and Lussan v. State Farm Ins. Co., 95-180 (La.App. 5 Cir. 7/25/95), 659 So.2d 830, for the proposition that La. R.S. 9:1123.112 requires mandatory coverage for damages caused by common elements. However, as the Riverside Association correctly points out, the two cases cited by Plaintiffs involve a third party who slipped and fell on arguably “common” areas of a condominium building and an insurance company moved for summary judgment, which was denied by the state courts under La. R.S. 9:1123.12 and thus, the cases do not resolve the issue at hand of whether La. R.S. 9:1123.12 requires a condominium association to cover property damage to individual units.
To place this matter in proper perspective, we must address the Riverside Association’s declaration. The Riverside Association’s declaration provides, under Article XIII:
Except to the extent the Board provides (at its option and discretion) maintenance of the Units for Unit Owners, each Unit Owner, at his own expense shall furnish and be responsible for all maintenance of repairs to and replacements within his own Unit. Maintenance of, repairs to and replacements within the Common Elements shall be the responsibility of and shall be furnished by the Association. The cost of maintenance of, repairs to and replacements within the Units to the extent the Board elects to provide such services and within the Common Elements shall be part of the common expenses, subject to the By-Laws, rules, and regulations of the Association.
In May 1995, the condominium units were given the opportunity to vote on whether or not interior repairs for damage caused by common elements would be covered and furnished by the association. On June 6, 1995, the Riverside Association sent a notice to the homeowners informing them that it would no |slonger be making interior repairs to any unit. Specifically, the notice stated, in pertinent part:
On Thursday June 1st a Board of Directors meeting was held to address the outcome of the two issues that were put to a vote by the association and all votes were to be returned no later than May 24th. The outcome is as follows: As of July 1, 1995 there will be an assessment increase of 5% on all units, and as of July 1, 1995 there will be no more interior repairs (damage caused from common elements) to any unit.
After a close reading of the Louisiana Condominium Act, we find nothing in the Act that requires the Riverside Association to make interior repairs for damage caused by common elements. According *123 ly, we find that the vote and subsequent notification that, as of July 1, 1995, the Riverside Association would no longer furnish interior repairs for damage caused from common elements, complied with the Louisiana Condominium Act as well as the Riverside Association’s declaration.
For these reasons, we affirm the judgment of the trial court, which granted summary judgment in favor of defendant Riverside Court Condominium Association, Inc., and its finding that the Riverside Court Condominium Association, Inc. is not responsible for the damages alleged by Mr. and Mrs. Roach.
AFFIRMED.

. The Roachs purchased the condominium unit in 1986.